## AFFIDAVIT

William T. Conrad, first being duly sworn, deposes and says:

1. I have been a police officer for approximately 16 years and am currently assigned as a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA) in Cincinnati, Ohio. I have attended the two week DEA Basic school and have participated in numerous narcotics investigations over the last four years.

2. The information in this Affidavit is based on my personal investigation and does not include all information obtained during this investigation, rather only that believed necessary to provide a legal basis for the civil forfeiture.

3. On January 13, 2016, agents from the DEA Cincinnati Resident Office (RO) and detectives with the Cincinnati/Northern Kentucky International Airport Police Department (APD) determined that Robert Stroud was traveling from Cincinnati to Los Angeles, California, on a suspicious flight itinerary. Stroud had purchased a one-way airline ticket one (1) day prior to travel and he was traveling from a known user city/state to a known source city/state with no checked bags. In addition, Stroud is a subject in an active DEA case in Dayton, Ohio, and he is on supervised release following a federal conviction in the Southern District of Texas. His criminal history report shows prior charges for possession and drug trafficking, as well as several firearms charges.

4. Officers and detectives responded to the airport terminal departure gate for the flight to Los Angeles. During the boarding process, TFO Eli Sautter positioned himself behind the ticket agent to observe passengers' names as boarding passes were

scanned. Once Stroud's ticket was scanned, TFO Sautter identified himself as a police officer and asked Stroud's permission to speak to him. Stroud stated, "Yes." During the consensual encounter, Stroud was in the open prior to the jet-way, free to leave at any time.

5. TFO Sautter explained to Stroud that he and the other officers are part of an interdiction group looking for weapons, narcotics, or large sums of money and asked him if he had any of those items on him. Stroud responded that he had $9,000.00. When asked what he does for employment Stroud stated that he owns property.

6. TFO Sautter then asked Stroud the purpose of his travel and he stated that he was going to see his son.

7. TFO Sautter asked Stroud for permission to search his person, to which he responded "Yes," verbally consenting to the search. TFA Sautter noted that money was sticking out of the pockets of Stroud's sweatpants. During the search of Stroud's person, two (2) large bundles of currency were located in Stroud's front pants pockets. The currency was placed in front of Stroud while the interview continued. TFA Sautter asked Stroud who the money belonged to and he stated that it was his and he had earned it working.

8. I asked Stroud if he had ever been arrested before and he stated that he had been arrested for weapons and drugs in 1990. I asked what the currency he was carrying was going to be used for and he stated that he was going shopping. I then asked

Stroud if I could look in the three (3) cell phones that he possessed and he stated "No."

9. Having noted that Stroud was traveling without any carry-on bags or checked luggage, TFO Sautter asked where all his clothes were and what he was going to wear while in California. Stroud's response was, "What do I need clothes for?"

10. I advised Stroud that we would be seizing his currency based upon probable cause that it was proceeds of drug trafficking or was intended for such use. The total amount of currency seized from Stroud's person was $9,798.00.

11. Probable cause that the U.S. currency carried by Stroud was proceeds from drug-related activities or intended for such use is supported by the following factors:

- Travel on recently purchased one-way airline ticket with no carry-on or checked bags;
- Travel to a known source city/state with large amount of cash;
- Drug-related criminal history and ongoing DEA investigation;
- Deceptive response regarding criminal history;
- Positive indication by drug dog.

12. On or about April 11, 2016, Robert Stroud aka Jamall Lawson filed a claim with the Drug Enforcement Administration to the $9,798.00 in United States currency seized from him.

For the above-stated reasons your affiant believes that the seized currency was furnished or intended to be furnished in exchange for a controlled substance, was

3

proceeds traceable to such an exchange, or was intended to be used to facilitate the illegal sale of narcotics and is, therefore, subject to seizure and forfeiture to the United States of America pursuant to 21 U.S.C. § 881 (a)(6).

I declare under penalty of perjury, as provided by federal law, that the foregoing statements are true.

This __5__ day of __July__, 2016.

_____
TFO William T. Conrad
Task Force Officer
Drug Enforcement Administration